Matthew R. Miller (SBN 194647)
MILLER LAW FIRM
835 Fifth Avenue, Suite 301
San Diego, CA 92101
Telephone: (619) 687-0143
Fax: (619) 687-0136
Email: matt@mrmlawfirm.com

Brian C. Dawson (SBN 183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92121
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NEXA MORTGAGE, LLC, et al.,<br><br>Defendants. | **Case No. 3:22-cv-01895-BAS-DDL**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO REMAND**<br><br>Date:     January 30, 2023<br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**<br><br>Dept.:    4B<br>Judge:    Hon. Cynthia Bashant<br><br>State Action Filed: August 3, 2022<br>FAC Filed: October 31, 2022<br>Removal Date: November 30, 2022 |

# TABLE OF CONTENTS

I. Introduction ……………………………………………………………… 1

II Procedural history ………………………………………………………. 1

III Defendant Bears the Burden of Proving that the Requisite Jurisdiction Exists to Support Removal …………………………………….. 2

IV. This Court Must Remand the Action Because Defendant Fails to Establish that the Court has Subject Matter Jurisdiction ………………… 3

    A. Defendant has not established the requisite amount in by a preponderance of the evidence …………………………………….. 3

        1. Contrary to defendant's assertion, the Complaint allegation that the Plaintiffs "regularly" worked 50 hours per week does not equate to $54,000 at issue …………………………… 4

        2. Defendant can only speculate as to the value of Plaintiff's other claims being more than $21,000 ………………………… 6

        3. Interest, costs, and potential attorneys' fees should not be considered for determining the amount in controversy in this case ………………………………………………………….. 7

    B. The Central District Court recently remanded a nearly identical case against Defendant after it failed to demonstrate the amount at issue exceeded $75,000 ……………………………………………. 8

    C. The Court should hear this motion to remand prior to ruling on Defendant's pending motion to compel arbitration ………………….. 8

V. Conclusion ………………………………………………………………... 9

# TABLE OF AUTHORITIES

**Cases**

*Dart Cherokee Basin Oper. Co., LLC v. Owens*, 574 U.S. 81 (9th Cir. 2014) ……. 2,3

*Gaus v. Miles*, 980 F.2d 564 (9th Cir. 1992) …………………………………….. 2

*Hsu v. Abbara*, 9 Cal. 4th 863 (1995) …………………………………………… 7

*Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193 (9th Cir. 2015) …………….. 3

*Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241 (9th Cir. 2009) …………… 2

*On-Line Power, Inc. v. Mazur*, (2007) 149 Cal.App.4th 1079 ……………………. 7

*Scott Co. of California v. Blount, Inc.*, 20 Cal.4th 1103 (1999) ……………………7

*Vaden v. Discover Bank*, 556 U.S. 49 (2009) ……………………………………. 9

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) ………………………… 2

**Statutes**

9 U.S.C. §4 ………………………………………………………………………… 9

28 U.S.C. §1332(a) ………………………………………………………………. 1,3

28 U.S.C. § 1332(a)(1) …………………………………………………………….. 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

This Court does not have jurisdiction to adjudicate this action. Defendant NEXA Mortgage, Inc. ("Defendant") fails to establish that the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. §1332(a) is satisfied. Specifically, Defendant's Notice of Removal is devoid of factual or evidentiary support sufficient to establish that the requisite amount in controversy has been satisfied. The Ninth Circuit Court of Appeals has made clear that, in a removal jurisdiction dispute, a removing party must support all assertions about the amount in controversy with summary-judgment type evidence. Despite having access to the relevant evidentiary records, Defendant asks Plaintiff and the Court to simply trust its assertion that the amount in controversy exceeds $75,000, relying on self-serving calculations that have no basis in law or fact.

Plaintiff attempted in good faith to clarify these calculations through his meet and confer efforts with Defendant. However, the information and calculations provided by Defendant are woefully inaccurate and without foundation. See *Declaration of Brian C. Dawson* in Support of Plaintiff's Motion for Remand ("*Dawson Decl.*") at ¶¶ 3-4.

Accordingly, Defendant failed to meet its burden to establish that the amount in controversy requirement is satisfied and failed to meet its burden establishing that removal jurisdiction exists. Plaintiff therefore respectfully request that the Court remand this case to the Superior Court of California, for the County of San Diego.

## II. Procedural History

On or about August 3, 2022, Plaintiff Damian Diaz, individually and on behalf of all others similarly situated, filed a putative wage and hour class action Complaint ("Complaint") in San Diego Superior Court (captioned *Damian Diaz v. NEXA Mortgage, LLC*, Case Number 37-2022-00031816-CU-OE-NC) against Defendant. [Dkt. No. 1-2, Ex. C.]

On October 31, 2022, Plaintiff filed a First Amended Complaint, asserting causes of action for (1) Failure to Reimburse and Unlawful Deductions; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Wages; (4) Failure to Provide Rest & Meal Breaks; (5) Failure to Maintain and Furnish Accurate Records; (6) Failure to Timely Pay Wages; (7) Violation of B&P Code §§ 17200 et seq.; (8) Declaratory Relief, and (9) Enforcement of Labor Code Section 2698 et seq. ("PAGA"). [Dkt. No. 1-2, Ex. D.]

On November 30, 2022, Defendant filed its Notice of Removal based on subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). (Dkt. No. 1)

On December 9, 2022, pursuant to Department 4B's Standing Orders, Plaintiff met and conferred with Defendant's counsel via teleconference regarding the substance of this Motion to attempt a resolution without motion practice. *Dawson Decl.*, at ¶ 2. Despite thoroughly discussing the substance and potential resolution of this Motion, the parties' meet-and-confer efforts did not resolve the matter without motion practice. *Id.*

### III. Defendant Bears the Burden of Proving that the Requisite Jurisdiction Exists to Support Removal

A defendant seeking removal of an action to federal court has the burden of establishing grounds for federal jurisdiction in the case. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The <u>removing party</u> must prove by a preponderance of the evidence the <u>actual facts</u> necessary to support the petition for removal, *e.g.*, the existence of diversity, the amount in controversy, or the federal nature of the claim. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (9th Cir. 2014). Federal courts are courts of limited jurisdiction and strictly construe removal statutes against removal jurisdiction. *Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241, 1244 (9th Cir. 2009). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

## IV. This Court Must Remand the Action Because Defendant Fails to Establish that the Court has Subject Matter Jurisdiction

### A. Defendant Has Not Established the Requisite Amount in Controversy by a Preponderance of the Evidence

To establish diversity jurisdiction under 28 U.S.C. §1332(a), Defendant must demonstrate, at a minimum, that the plaintiff and the defendant are citizens of different states and that the aggregate amount in controversy exceeds $75,000.00 exclusive of interest and costs. When a plaintiff contests a defendant's amount in controversy calculation, the defendant bears the burden of proving that removal was proper by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 553-554 (2014).

"[I]n determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015). Next, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotations marks omitted). This procedure prevents a defendant from establishing federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions," instead requiring the parties to rely on "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1197-1198.

Further, district courts have found a defendant must offer evidence sufficient to prove that the amount in controversy can be satisfied (*i.e.*, that more likely than not, the amount in controversy exceeds $75,000.00). 28 U.S.C. §1332(a). A defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Further, any assumptions require "some reasonable ground underlying them." *Id.* at 1199.

Defendant's Notice of Removal cites three "reasons" to support its burden of demonstrating the amount in controversy exceeds $75,000: 1) Plaintiff's assertion in his complaint that the plaintiffs "regularly worked 50 hours per week during his employment" which somehow equates to $54,000 in damages; 2) Plaintiff's causes of action, in addition to his unpaid overtime claim, should at least be considered worth $21,000; and 3) that Plaintiff's request for interest, costs, and attorneys' fees should be considered for determining the amount in controversy. [Dkt. No. 1, at ¶¶ 11-12]. Even if taken in the aggregate, Defendant's reasoning fails to support its burden.

### 1. Contrary to defendant's assertion, the Complaint allegation that the Plaintiffs "regularly" worked 50 hours per week does not equate to $54,000 at issue.

Defendant cites to the allegations contained paragraph 21 of the First Amended Complaint related to the class claims as support for its assertion that the amount of overtime being claimed "put[s] at issue" approximately $54,000 based on an estimate of his regular rate of pay, using his income".[1] Disclosed through the "meet and confer" process between counsel, Defendant's counsel explained the method Defendant used to determine the value of Plaintiff's unpaid overtime claim, summarized as follows:

> Defendant used Plaintiff's yearly income for year 2021 ($94,000), and then applied that same yearly income to years 2020 and 2022.
> Defendants then used the $94,000 average yearly income amount, divided that by 52 weeks for the year to derive the average weekly income (approx. $1,800 per week), then divided that number by 40 hours per week to derive Plaintiff's regular hourly rate of pay ($45 per hour). Multiplying the regular rate of pay by 1.5, they derived Plaintiff's

---

[1] Paragraph 21 of the First Amended Complaint states: "In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more. Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510."

overtime rate (approx. $67 per hour). Since Plaintiff worked approximately 82 weeks during his entire tenure, Defendant calculated 82 weeks, times 10 hours per week of overtime, times the $67 overtime rate to estimate "approximately $54,000" at issue. *Dawson Decl.* at ¶¶ 3-4.

First, the reference cited by Defendant in paragraph 21 of the Complaint is an allegation related to the class members and contained within the "General Allegations" portion of the First Amended Complaint, rather than to Mr. Diaz specifically.

Second, even if this language is attributed specifically to Mr. Diaz, Defendant's method of calculating the $54,000 at issue is inflated and unsubstantiated for a number of reasons. As explained by Defendant's counsel during the meet and confer process, Defendant's reasoning incorrectly interprets the language of the Complaint that "Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more" to conclude that Plaintiff Diaz worked at least 50 hours per week every single week of his employment, and is owed for 10 hours of overtime for every single week. *Dawson Decl.* at ¶ 4.

Based on available records, Plaintiff Diaz worked from July 17, 2020 to February 9, 2022, or approximately 82 weeks total over the span of those three calendar years.

The first problem with Defendant's calculation is that just because someone alleges to regularly have worked overtime throughout their employment does not mean that person worked exactly 50 hours per week every week, as Defendant asserts in order to support its $54,000 calculation.

A second problem is that Defendant uses an inflated annual 2021 salary to support its calculations. Despite having access to Mr. Diaz's employment records, Defendant apparently uses $94,000 as Mr. Diaz's 2021 gross income. The 2020 W2 provided by Defendant to Plaintiff, however, shows gross income of only $88,273.

-5-  3:22-cv-1895-BAS-DDL
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO REMAND

A third problem is that Defendant completely ignores Plaintiff Diaz's 2020 and 2022 yearly income, using only his 2021 income (although falsely inflated) and then arbitrarily applying that false 2021 income to years 2020 and 2022 despite having his pay records for those years. This is not surprising, as Plaintiff Diaz only earned a total of $10,665 for year 2020, which would drastically deflate and undermine Defendant's $54,000 calculation had they used the actual figures available. (*Exhibit A*, Damian Diaz's 2020 and 2021 W-2 Wage Statements issued by Defendant.)

A fourth problem is that Defendant's calculations assume the *entire* overtime hourly rate ($67 per hour, based on the underlying false assumptions noted above) for every hour included in its calculations, rather than taking into consideration all regular hourly payments that may have been made to Plaintiff during those overtime hours being worked. In other words, Defendant's calculations credit Plaintiff with zero income earned during the overtime hours he may have worked, using $67 per hour owed, as opposed to just the overtime premium per hour owed, which would only be $22 per overtime hour. Using Defendant's own numbers (even though incorrectly derived), the difference between the full overtime hourly rate of $67 per hour ($45 x 1.5) compared to the overtime premium increase rate of $22 per hour ($67 minus $45) alone reduces Defendant's $54,000 estimate to only $18,040 ($22 per hr x 82 weeks x 10 hrs).

The result of all these problems, is that Defendant's calculations are based on inaccurate assumptions, incomplete and purposely misleading data, which amount to pure conjecture and render it essentially useless.

**2. Defendant can only speculate as to the value of Plaintiff's other claims being more than $21,000.**

Defendant offers no support for its supposition that Plaintiff's claims in addition to the overtime claim "including claims for minimum wage, statutory and civil penalties, as well as the inclusion of Private Attorney General Act ("PAGA") claims" "seek at least $21,000" [Dkt. No. 1, at ¶ 12.] The First Amended Complaint does not

specify any monetary amounts being sought for such causes of action, and Defendant, despite having a statutory obligation to maintain records of hours worked and the specific wages paid thereon, can offer no evidence to support this conjecture. As a result, Plaintiff and this Court are merely left guessing how Defendant arrived at the self-serving assumption that Plaintiff's claims seek at least an additional $21,000 in damages.

### 3. Interest, costs, and potential attorneys' fees should not be considered for determining the amount in controversy in this case

Struggling to find any support for its speculative arguments, Defendant suggests that interest and costs should be considered in determining the amount in controversy. [Dkt. No. 1, at ¶ 12.] Defendant's suggestion, however, is directly at odds with the plain language of 28 U.S.C §1332(a) which requires the amount in controversy to exceed "the sum or value of $75,000, exclusive of interest and costs."

Defendant also suggests that since there is a request for attorneys' fees in the First Amended Complaint, that attorneys' fees should also be considered in determining the amount in controversy. [Dkt. No. 1, at ¶ 12.] Not only is the amount in controversy to be determined as of the time of the claim, but whether any attorneys' fees, let alone the amount of any such fees, are purely speculative at the moment.

Where neither party secures a "complete, unqualified victory" on all claims, "it is within the discretion of the trial court to determine which party prevailed…or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." See *Scott Co. of California v. Blount, Inc.*, 20 Cal.4th 1103, 1109 (1999). In exercising this discretion, the court is to "compare the relief awarded…with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Hsu v. Abbara*, 9 Cal. 4th 863, 876(1995). This rule applies where both parties effectively win on some claims but not others, including the Labor Code context. *On-Line Power, Inc. v. Mazur*, 149 Cal.App.4th 1079, 1087 (2007) [noting that where plaintiff brought action

for breach of contract and Labor Code violations, and settled for $25,000 pursuant to statutory offer, it was the type of case where the court had discretion to determine the prevailing party]. Here, other than a half sentence remark in the Notice of Removal, Defendant has provided zero evidentiary support to suggest any amount of attorneys' fees or any reason to include any such fees in the determination of the amount in controversy.

### B. The Central District Court recently remanded a nearly identical case against Defendant after it failed to demonstrate the amount at issue exceeded $75,000.

It is very telling that a near identical case against Defendant filed by another one of its loan officers who was employed pursuant to the same written employment agreement as Plaintiff Diaz, and alleging essentially the same violations of the CA Labor Code as alleged in the present case, was remanded to Los Angeles Superior Court after Defendant had that case removed to US District Court, Central District of California. See *Umeres v. Nexa* (Case Number: 2:22-cv-05658-SB-AGR). The Honorable Stanley Blumenfeld, Jr. remanded that case on September 15, 2022 after determining the court lacked subject matter jurisdiction, as Defendant had not met its burden of demonstrating the amount in controversy exceeded $75,000. See *Exhibit* B, Order Granting Motion to Remand in Case No. 2:22-cv-05658-SB-AGR.

### C. The Court should hear this motion to remand prior to ruling on Defendant's pending motion to compel arbitration.

While orally meeting and conferring, it was explained to Defendant's counsel that it would be inappropriate for Defendant to file a motion to compel arbitration prior to the determination of subject matter jurisdiction in the case, and would arguably be wasting the Court's time should Defendant's bring such a motion in advance of the present Motion to Remand. *Dawson Decl.* at ¶ 5.

This request was followed up with written correspondence to Defendant's counsel on December 13, 2022, reminding Defendant's counsel that bringing a motion

to compel arbitration would be premature, and providing legal citation to *Vaden v. Discover Bank*, 556 U.S. 49 (2009) supporting the position that the issue of whether the court has subject matter jurisdiction should first be determined before the court could or should rule on any motion to compel arbitration. It was explained to Defendant's counsel that Section 4 of the Federal Arbitration Act (FAA or Act), 9 U.S.C. §4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties." However, "because the controversy between [plaintiff and defendant], properly perceived, is not one qualifying for federal-court adjudication, §4 of the FAA does not empower a federal court to order arbitration of that controversy, in whole or in part." *Vaden v. Discover Bank*, 556 U.S. 49, 70 (2009) and see *Dawson Decl.* at ¶¶ 5-6.

Despite urging Defendant not to file any motion to compel arbitration until the issue of jurisdiction was first determined, Defendant's counsel did not respond, and instead filed Defendant's motion to compel arbitration (presently scheduled for hearing on February 21, 2022). *Dawson Decl.* at ¶ 6.

## V. Conclusion

Defendant's removal of this action is entirely devoid of any summary judgment evidence. Defendant has not met its burden to prove that this action is within the jurisdiction of the Court. Plaintiff respectfully requests this Court to grant his Motion and remand the action to the San Diego County Superior Court in which it was filed.

Dated: December 26, 2022　　　　DAWSON & OZANNE

By: s/ *Brian C. Dawson*
　　BRIAN C. DAWSON, Attorneys for
　　Plaintiff Damian Diaz
　　Email: brian@dawson-ozanne.com