1  Matthew R. Miller (SBN 194647)
   MILLER LAW FIRM
2  835 Fifth Avenue, Suite 301
3  San Diego, CA 92101
   Telephone: (619) 687-0143
4  Fax: (619) 687-0136
5  Email: matt@mrmlawfirm.com

6
   Brian C. Dawson (SBN 183251)
7  DAWSON & OZANNE
   5755 Oberlin Dr., Suite 301
8  San Diego, CA 92121
9  Telephone: (619) 988-2135
10 Email: brian@dawson-ozanne.com  *Attorneys for Plaintiff*

11             **UNITED STATES DISTRICT COURT**
12             **SOUTHERN DISTRICT OF CALIFORNIA**

13 | DAMIAN DIAZ, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-1895-BAS-DDL |
14 | | **PLAINTIFF'S REPLY BRIEF SUPPORTING MOTION TO REMAND** |
15 | Plaintiff, | |
16 | v. | |
17 | NEXA MORTGAGE, LLC, et al., | Date:   January 30, 2023 |
18 | | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |
19 | Defendants. | |
20 | | Dept.:  4B |
   | | Judge:  Hon. Cynthia Bashant |
21 | | |
22 | | State Action Filed: August 3, 2022 |
   | | FAC Filed: October 31, 2022 |
23 | | Removal Date: November 30, 2022 |

# TABLE OF CONTENTS

I. Introduction ……………………………………………………………………… 1

II. Nexa's Has Failed to Meet Its Burden to Demonstrate Over $75,00 in Controversy ……………………………………………… 1

    A. Defendant's "ADP Pay Summaries" which form the backbone of its damages calculations, are speculative and cannot be relied upon. ……………………………………………………………. 1

    B. Defendant continues to change its position each time its errors are exposed, further discrediting its calculations as speculative ………… 2

    C. Defendant's new "unpaid" minimum wage and "unpaid" overtime calculations are highly speculative ………………………… 3

    D. Defendant's pay rates and resulting overtime rates are open to several interpretations, further undermining Defendant's calculations and erode its claim there is over $75,000 at issue………. 6

    E. Defendant's reimbursement calculations lack foundation……………. 7

    F. Defendant's own records undermine Defendant's paystub violation calculations …………………………………………………………… 8

    G. Defendant's attorneys' fees calculations are also based on false assertions ……………………………………………………… 8

III. Conclusion ……………………………………………………………………... 9

# TABLE OF AUTHORITIES

**Cases**

*Canales v. Wells Fargo Bank*, (2018) 23 Cal.App.5th 1262………………………. 5

*Cochran v. Schwan's Home Service, Inc.*, (2014) 228 Cal.App.4th 1137…………. 7

*Magadia v. Wal-Mart Associates, Inc.*, (9th Cir. 2021) 999 F.3d 668 ……………. 4

**Statutes**

*29 U.S.C. §207* ………………………………………………………………….. 4

*CA Labor Code §200* ……………………………………………………………. 4

*CA Labor Code §203* ……………………………………………………………. 9

*CA Labor Code §204* …………………………………………………………….. 4,8

*CA Labor Code §226* ……………………………………………………………. 1,4,5,8,9

*CA Labor Code 1174* ……………………………………………………………. 1

PLAINTIFF'S REPLY BRIEF SUPPORTING MOTION TO REMAND

## I. Introduction

Defendant NEXA Mortgage, Inc.'s ("Defendant") Opposition presents yet another, alternate interpretation of the minimal employment data that it has been willing to offer as evidence thus far. The data relied upon by Defendant is not credible, nor are its calculations that rely on that data. A closer look at Defendant's data and calculations amount to damages totaling less than $48,000.

The scant records Defendant has been willing to produce to support its nebulous position are open to several other interpretations, all of which undermine Defendant's damages calculations and lead to the conclusion that Defendant has failed to satisfy its burden of proving by a preponderance of the evidence that the amount in controversy is over $75,000.

## II. Nexa's Has Failed to Meet Its Burden to Demonstrate Over $75,00 in Controversy

### A. Defendant's "ADP Pay Summaries" which form the backbone of its damages calculations, are speculative and cannot be relied upon.

Defendant's opposition makes several calculations based on its 2020 and 2021 ADP "Pay Summaries" that, according to Defendant, are presented as accurate representation of Plaintiff's total compensation during his employment with defendant. These records alone are very suspect, lacking foundation and credibility.

First, Defendant's ADP "Pay Summaries" are admittedly **not** copies of the wage statements applicable to Plaintiff. Despite CA Labor Code §226 & 1174's requirement that Defendant provide and maintain copies of the wage statements for at least three years per, Defendant's "summaries" disclaim themselves as just a "record of a payment issued and not an image of the actual pay statement". (See e.g. *Exh. 1* to Opposition [Dkt. 9-1] pg. 001).

Second, Defendant's "Pay Summaries" directly conflict with Defendant's ADP "Total Compensation Statements" provided by Defendant to Plaintiff through the meet and confer process. These Total Compensation Statements have not surprisingly been

omitted by Defendant in its Opposition as a result. (See "ADP Total Compensation Statements" for years 2020 and 2021 provided by Defendant are attached as *Exhibit "A"* to the Declaration of Brian C. Dawson filed herewith.)

For example, totaling up Defendant's ADP "Pay Summaries" for year 2020 show Plaintiff grossing total compensation of $10,665.71 on a Salary "Basis of Pay". (*Exh. 1* to Opposition [Dkt. 9-1] pgs. 007-010)  Defendant's ADP Total Compensation Statement for year 2020, however, shows Plaintiff earning $11,768.65 (*Exhibit "A"*, at pg. 001.)

Year 2021 has a similar problem.  Defendant's ADP "Pay Summaries" for year 2021 show Plaintiff earning total compensation of $88,273.49, also on a Salary "Basis of Pay". (*Exh. 1* to Opposition [Dkt. 9-1] pg. 001-006 & 011-019)  Defendant's ADP Total Compensation Statement for year 2021 shows Plaintiff earning $95,313.42. (*Exhibit "A"*, at pg. 003.)

Defendant undoubtedly has the ability to produce Plaintiff's Total Commission Statement for year 2022, but has chosen to withhold that from evidence.  Plaintiff's 2020 and 2021 W2 Wage Statements also conflict with Defendant's Total Compensation Statements.  As of now, Defendant has not provided a W2 Wage statement for year 2022 despite the ability to have done so.

Defendant's inherently conflicting data within its own records calls into question the validity of its "evidentiary" support for its Opposition, while also undermining the credibility for all of Defendant's damages calculations that rely on this very suspect data.

**B. Defendant continues to change its position each time its errors are exposed, further discrediting its calculations as speculative.**

In its Notice of Removal, Defendant asserted $54,000 in unpaid overtime wages based on its interpretation of the First Amended Complaint. [Dkt. 1 at ¶ 11.]  During the meet and confer process, Defendant provided the basis for its $54,000 overtime damages calculation.  The 2020, 2021, and 2022 calculations were all based on

Plaintiff's 2021 income, which was also erroneously inflated by Defendant. Despite having Plaintiff's payroll information for 2020, 2021, and 2022, Defendant chose to ignore the 2020 & 2022 records, and instead applied the 2021 income to years 2020 and 2022 as well. The many problems with Defendant's error ridden first approach were pointed out in Plaintiff's Motion to Remand.

In its Opposition, Defendant now ignores its previously asserted calculations, and instead offers a totally new set of calculations for Plaintiff's "unpaid" overtime, this time equaling $17,587.60. Despite having access to more helpful information, Defendant offers an alternate interpretation of its same "data" upon which it initially relied. This incomplete "data" continues to be open to several different interpretations, each leading to different damages calculations, even those offered by Defendant.

**C. Defendant's new "unpaid" minimum wage and "unpaid" overtime calculations are highly speculative.**

Aside from being internally conflicting on their face, another problem for the data upon which Defendant relies to calculate unpaid overtime and unpaid minimum wages is that Defendant's "pay summaries" are so lacking in information that it is very difficult to reach any credible calculations as a result.

For example, depending on which of Defendant's documents are used, Plaintiff either earned $95,313.42 or $88,273.49 for year 2021. Based on the 2021 $14.00 per hour minimum wage rate, a full-time minimum wage worker would earn $29,120 for the entire year ($14 per hr. x 8 hours per day x 5 days per week x 52 weeks). At 50 hours worked per week, the total yearly minimum wage would be $36,400. On a yearly basis, Plaintiff clearly earned well in excess of minimum wage for year 2021, yet Defendant's calculations suggest Plaintiff is due $10,773.10 in "unpaid" minimum wages for that year.

The lack of credible evidence raises at least two problems with Defendant's most recent "unpaid" minimum wage and overtime wage calculations. A review of

the data provided by Defendant suggests it may be more credible to conclude Plaintiff was paid *all* of his minimum wages and *all* of his overtime wages for years 2021 and 2022.

First, California employers are permitted to "true-up" payments made to employees during a current pay period for wages earned by the employee in previous pay periods for overtime purposes. True-up payments are not necessarily required to include the hourly rates applicable to those "after the fact" adjustments based on previously earned amounts. In *Magadia v. Wal-Mart Associates, Inc.*, the Ninth Circuit concluded that CA Labor Code §226(a)(9) did not require the reporting of rates and hours from prior periods in connection with overtime adjustment payments, which relied upon lump sum overtime payments associated with incentive bonuses from prior periods. (*Magadia v. Wal-Mart Associates, Inc.*, (9th Cir. 2021) 999 F.3d 668, 672.) Thus, true-up payments can be calculated using the number of hours worked during earlier periods. These adjustments to overtime are "a non-discretionary, after-the-fact adjustment to compensation based on the overtime hours worked and the average of overtime rates," and such calculations do not reflect "an 'hourly rate in effect during the pay period.' " (*Id.* at 681.)

It is undisputed that Plaintiff earned commissions, even though Defendant has withheld any calculations of the commissions earned by Plaintiff. Commission payments are to be included in the calculation of regular rate of pay, and the resulting overtime rates of pay. (See *29 U.S.C. §207(e)*; *CA Labor Code §200*; and https://www.dir.ca.gov/dlse/faq_overtime.htm .)

Overtime wages must be paid no later than the payday for the next regular payroll period following the payroll period in which the overtime wages were earned. An employer shall be in compliance with Labor Code Section 226(a) relating to total hours worked by the employee if the overtime hours are recorded as a correction on the itemized statement for the next regular pay period and include the dates of the pay period for which the correction is being made. *CA Labor Code §204(b)(2)*

1     Reviewing Defendant's 2021 "pay summaries", is easy to conclude Diaz was
2 paid commissions during certain weeks of the year, which was presumably
3 compensation for work performed in previous weeks and/or months.  If Defendant
4 was truing-up wages from previous pay periods, Defendant's entire 2021 "unpaid
5 minimum wage" calculations and arguably it's overtime calculations could become
6 $0.00.  Without any other documentation (which presumably remains in the sole
7 possession of Defendant) it is not possible to know.
8     Second, even assuming there was *never* a single "true up" payment made to
9 Plaintiff, Defendant's records are still open to yet another interpretation that also
10 greatly diminishes Defendant's unpaid minimum wage and overtime calculations.  For
11 example, knowing Plaintiff was actually paid well in excess of the total minimum
12 wage for years 2021 and 2022, Plaintiff may only be able to collect damages for late
13 penalties during the pay periods in which he did not receive a paycheck.  In other
14 words, Defendant's nebulous records support the conclusion that Plaintiff was paid all
15 of his minimum wages, but received those payments late.
16     To determine late payment penalties, the first step is determining whether
17 Plaintiff was paid on weekly or bi-weekly pay period.  Defendant's "pay summaries"
18 for 2020 and 2021 suggest weekly pay periods, but these conflict with Defendant's
19 2022 "Statements of Earnings" which suggest bi-weekly pay periods. (See e.g.
20 Opposition [Dkt. 9-1] *Exh. 1*, pg. 022-027, citing two-week pay periods.)  Employers
21 are authorized to issue a pay statement weekly or bi-weekly. (See *Canales v. Wells*
22 *Fargo Bank*, (2018) 23 Cal.App.5th at 1271-72: "The plain meaning of the statute
23 indicates the Legislature specifically intended a choice for employers as to when to
24 furnish the wage statement.").  So long as "an employer furnishes an employee's wage
25 statement before or by the semimonthly deadline, the employer is in compliance" with
26 §226(a)(6). (*Id.* at 1271.)
27     Since all of Defendant's "pay summaries" are disclaimed as just a "record of a
28 payment issued and not an image of the actual pay statement" there is nothing

conclusive to confirm Plaintiff was to be paid on weekly pay periods, rather than bi-weekly periods.

Even using *weekly* pay periods, Defendant's evidence shows only $18,841 owing to Plaintiff for the late paid minimum wages, rather than Defendant's grossly inflated $56,100 figure. If the pay periods are calculated on the statutorily required *bi-weekly* periods, the amount owing to Plaintiff for would be reduced to only $15,028.58. The tables attached as *Exhibit "B"* to the Declaration of Brian C. Dawson filed herewith, demonstrate these late payment penalties based on Defendant's records for both weekly and bi-weekly pay periods[1].

Defendant presumably has additional records to verify the same, but has chosen to withhold all of that data from Plaintiff and the Court. Should the remand be denied, Defendant will undoubtedly produce the commission records, business expenses charged, actual pay statements for Plaintiff's entire tenure, and presumably other documentation in its attempt to demonstrate all minimum wages and all overtime were paid, with whatever minor late payment penalties might be applicable.

**D. Defendant's pay rates and resulting overtime rates are open to several interpretations, further undermining Defendant's calculations and erode its claim there is over $75,000 at Issue.**

Since Defendant is only willing to provide the "pay summaries" for 2020 and 2021, it is not possible to tell what information was actually included in the calculations of the summaries. The pay summaries provide a total amount per payment, as a "Salary Basis" with the word "Commission" also listed next to the "Gross Pay" on the summaries. Payments to Plaintiff for "true ups", reimbursements, benefits, overrides, etc. that should not be calculating regular rate of pay and the

///

---

[1] These late payments tables might also cover late paid overtime wages, but the lack of information provided by Defendant's makes it impossible to confirm one way or another.

resulting overtime rate could have been included in Defendant's calculations, which would also artificially inflate the regular and overtime rates.

Defendant asks the Court to trust its calculations, based on Defendant's interpretation of its own, incomplete, summaries. Having withheld the information that presumably assist in arriving at less speculative calculations, we have to assume that information would only further reduce Defendant's numbers.

### E. Defendant's Reimbursement Calculations lack foundation.

Concerning unreimbursed expense damages, Defendant concludes that a "national average" gleaned from a web search for cell phone expenses and internet expenses is somehow credible evidence of the unreimbursed expenses claimed in the present case. Defendant uses $144 for monthly cell phone expenses and $36.33 for monthly internet expenses to arrive at $3,697 for unreimbursed expenses. There is no credible foundation for using these numbers or the extrapolated total. Even if Defendant's averages are used, they would arguably still only be a fraction of Defendant's total, as employers are responsible to reimburse a "reasonable percentage of the employee's cell phone bill". (See *Cochran v. Schwan's Home Service, Inc.*, (2014) 228 Cal.App.4th 1137, 1144.)

Ironically, Defendant relies on a generic internet search to find evidentiary support for the actual expenses incurred by Plaintiff, while alluding to other, specific Nexa expenses related to Plaintiff's employment that would be easily calculable by Defendant ("background checks" Nationwide Multistate Licensing System & Registry Fees, 'Technology' fees, NXAtouch (BNTouch) fee, credit report costs, NEXA Accounting Fees..." *see Opposition* at page 14). The actual expenses referred to in the Opposition are well known and calculable by Defendant, but it has chosen to withhold that information from Plaintiff and the Court.

///

///

### F. Defendant's own records undermine Defendant's paystub violation calculations.

Defendant uses a total of 41 pay periods to support its damages calculations for inaccurate wage statements under Labor Code §226(e)(1)226, arriving at the maximum amount permitted under the statute- $4,000. This of course is presuming that Plaintiff was paid on a weekly basis, rather than bi-weekly as required by Labor Code §204. Since Defendant's summaries records conflict with its Earnings Statements, and since the statue only requires bi-weekly payments, it is more credible (based on data presently available) to use bi-weekly pay periods rather than weekly pay periods when calculating §226 damages. With this in mind, Defendant's §226 damages calculations would drop down to $2,000.

### G. Defendant's attorneys' fees calculations are also based on false assertions.

Defendant's attorneys' fees calculations also dimmish greatly when Defendant's other calculations upon which those fees are based are reduced. Although there is no certainty that attorneys' fees would be awarded in this matter, even assuming that a 25% fee award should be included in the $75,000 threshold calculation yields a much lower amount than suggested by Defendant.

Using the more realistic approach to evaluate Defendant's damages data, as explained above, Defendant's "unpaid" minimum wages drop to $18,841.08 using weekly pay periods ($15,028.58 if using the statutory required bi-weekly pay periods). Defendant's Labor Code §226 paystub violation calculations drop to $2,000. Even using Defendant's inflated $17,585.60 overtime damages figure, the total of Defendant's damages calculations drop far lower than the required $75,000 threshold, whether calculated on weekly pay periods *or* bi-weekly pay periods:

///

///

| Damages Based on **Weekly Pay Periods** | Amount |
|---|---|
| Overtime Damages: | $17,587.60 |
| Minimum Wage Damages: | $18,841.08 |
| Labor Code §203 Penalties: | $3,600.00 |
| Reimbursement Damages: | $0.00 |
| Labor Code §226 Pay Statement Damages (weekly pay periods): | $4,000 |
| Attorneys' Fees (25%) | $11,007.17 |
| **Total:** | **$55,035.85** |

| Damages Based on **Bi-Weekly Pay Periods** | Amount |
|---|---|
| Overtime Damages: | $17,587.60 |
| Minimum Wage Damages: | $15,028.58 |
| Labor Code §203 Penalties: | $3,600.00 |
| Reimbursement Damages: | $0.00 |
| Labor Code §226 Pay Statement Damages (weekly pay periods): | $2,000 |
| Attorneys' Fees (25%) | $9,554.05 |
| **Total:** | **$47,770.23** |

### III.  Conclusion

Using Defendant's data, the damages calculations drop significantly just based on the interpretation of that data.  Defendant had the opportunity to provide more data (and more reliable data) but has chosen not to.  The result of all these problems, is that Defendant's calculations are based on inaccurate assumptions, incomplete and purposely misleading data, which amount to pure conjecture and render it essentially useless.

///

Defendant has not met its burden to prove that this action is within the jurisdiction of the Court. Plaintiff respectfully requests this Court to grant his Motion and remand the action to the San Diego County Superior Court in which it was filed.

Dated: January 23, 2023               DAWSON & OZANNE

                                By:   s/ *Brian C. Dawson*
                                      BRIAN C. DAWSON, Attorneys for
                                      Plaintiff Damian Diaz
                                      Email: brian@dawson-ozanne.com