Matthew R. Miller (SBN 194647)
MILLER LAW FIRM
835 Fifth Avenue, Suite 301
San Diego, CA 92101
Telephone: (619) 687-0143
Fax: (619) 687-0136
Email: matt@mrmlawfirm.com

Brian C. Dawson (SBN 183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92121
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NEXA MORTGAGE, LLC, et al.,<br><br>        Defendants. | **Case No. 3:22-cv-1895-BAS-DDL**<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date:        February 21, 2023<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**<br><br>Dept.:    4B<br>Judge:    Hon. Cynthia Bashant<br><br>State Action Filed: August 3, 2022<br>FAC Filed: October 31, 2022<br>Removal Date: November 30, 2022 |

## TABLE OF CONTENTS

I.   INTRODUCTION ………………………………………………….. 1

II.  STATEMENT OF FACTS ………………………………………  1

III. LEGAL STANDARD ………………………………………………  4

IV.  LEGAL ARGUMENT ……………………………………………… 6

A.   Nexa Waived Its Right to Arbitration By Initiating
     a Case In Arizona Against Diaz ………………………………… 6

B.   The Arbitration Provision Is Unconscionable and
     Should Not be Enforced ………………………………………… 9

     1.   The Arbitration Provision Is Procedurally Unconscionable ….. 9

          (a)   Nexa's arbitration rules, which were never
                provided to Diaz, are purposely ambiguous …………… 10

          (b)   Nexa's "opt out" provision was carefully hidden
                from Diaz and almost impossible to elect ……………… 12

     2.   The Arbitration Provision is Substantively Unconscionable ….. 14

          (a)   The arbitration provision requires Diaz to split
                arbitration fees and costs with Nexa …………………… 15

          (b)   The Agreement contains an improper choice of
                law clause ………………………………………………….. 17

          (c)   The Agreement contains an improper choice of
                forum clause ……………………………………………….. 18

          (d)   The Agreement contains an improper clause exempting
                Nexa from arbitrating claims it is likely to bring ………. 18

     3.   Nexa's Employment Agreement Cannot Be Saved By
          Severing the Numerous Deficiencies ……………………………… 20

C.   The Court Should Stay Diaz' Representative PAGA Claims If
     Arbitration is Ordered …………………………………………………… 22

VII. CONCLUSION …………………………………………………………… 23

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Cases:**

*Acorn v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160 (N.D. Cal. 2002) …… 14

*AMN Healthcare, Inc. v. Aya Healthcare* Services,
   28 Cal.App.5th 923 (2018) …………………………………………… 18

*Armendariz v. Foundation Health Psychcare Services Inc.*,
   24 Cal.4th 83 (2000) ……………………………5, 14, 15, 17, 19, 20, 21

*Baltazar v. Forever 21, Inc.*, 62 C4th 1237 (2016) ………………………… 11

*Barker v. Insight Global, LLC*, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) .. 18

*Baxter v. Genworth North America Corp.* 16 CA5th 713 (2017) ………… 20

*Bridge Fund v. Fastbucks Franchise*, 622 F.3d 996 (2010) ……………… 20

*Brown v. Dillard's*, 430 F.3d 1004 (9th Cir. 2005) ………………………….. 7, 8

*Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227 (2016) …………………… 14

*Circuit City Stores, Inc. v. Adams*, 279 F3d 889 (9th Cir. 2002) …………… 15

*Circuit City Stores, Inc. v. Mantor*, 335 F3d 1101 (9th Cir. 2003) …………13

*Cole v. Burns Int'l Security Services*, 105 F.3d 1465 (D.C. 1997) ………….. 15

*Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002) .. 9

*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) …………………………….. 10

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
   232 Cal. App. 4th 1332 (Feb. 9, 2015.) ……………………………… 9

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) ………………………….. 10

*Johnson v. Maxim Healthcare Servs., Inc.* 66 Cal.App.5th 924 (2021) …….. 23

*Kim v. Reins Int'l California, Inc.*, 9 Cal.5th 73 (2020) ……………………. 22

*Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App.4th 1322 (1999) …… 4, 9

*Laughlin v. VMware, Inc.*, 2012 U.S. Dist. LEXIS 12262 ………………….. 19

*LGCY Power LLC v. Superior Court*, 75 Cal.App.5th 844 (2022) …………. 5

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) ………………… 13

*Little v. Auto Stiegler, Inc.*, 29 C4th 1064 (2003) …………………………… 15

*Loral Corp. v. Moyes*, 174 Cal.App.3d 268 (1985) …………………………… 7

*Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125 (C.D. Cal. 2006) ………………. 18

*Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107 (2004) ……………. 9, 19

*Morgan v. Sundance, Inc.,* 142 S.Ct. 1708 (2022) …………………………. 4, 6

*Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286 (2006) …………… 17

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019) …………………………………14

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) ………………… 10, 21

*Porkorny v. Quixtar, Inc.*, 601 F.3d 987 (9ᵗʰ Cir. 2010) …………………… 15

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ……………... 5, 9

*Pry Corp. of America v. Leach*, 177 Cal.App.2d 632 (1960) ………………. 7

*Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899 (2015) …………………. 5

*Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015) ………………. 21

*Shankle v. B-G Maintenance Mgmt. of Colorado, Inc.,*

       163 F.3d 1230 (10th Cir. 1999) ……………………………… 15

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109 (2013) ………………. 14

*Subcontracting Concepts (CT), LLC v. De Melo*, 34 CA5th 201 (2019) …… 20

*Ting v. AT&T*, 319 F.3d 1126 (9ᵗʰ Cir. 2003) ………………………………. 17

*Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387 (2010) ……………… 10

*United States v. Park Place Associates Ltd.,* 563 F3d 907 (9ᵗʰ Cir. 2009) ….. 6

*Viking River Cruises v. Moriana,* 142 S.Ct. 1906 (2022) …………………… 22

*Zullo v. Superior Court*, 197 Cal. App. 4th 477 (2011) …………………….. 10


## Statutes

9 *U.S.C.* § 2 ………………………………………………………………… 4

CA Business & Professions Code § 16600 ………………………………… 18

CA Civil Code § 1717 ……………………………………………………… 18

CA Labor Code § 925 …………………………………………………… 4, 5, 17

## I.

## <u>INTRODUCTION</u>

For the past few years, Nexa, based in Arizona with no office in California, has become one of the fastest growing mortgage companies through cost saving practices such as wage theft. The scheme is simple and involves exploiting California workers by misclassifying them as exempt from overtime, minimum wage, meal and rest break laws. Nexa wants the benefits of using California workers to sell its loans to California consumers without the burden of having to comply with California laws. Nexa's avoidance of California labor laws hurt workers and undermines other competing businesses who play by the rules.

Defendant Nexa Mortgage, LLC ("Nexa") has waived its right to pursue arbitration. Despite this fact, Nexa is still trying to enforce an arbitration provision that is impermissibly unconscionable. By purposely creating an adhesive agreement that is both substantively and procedurally unconscionable, the offending provisions with the agreement cannot and should not be saved by simply severing the offending clauses. Any after-the-fact willingness by Nexa to now alter its arbitration provisions should not be considered. This court should deny Nexa's Motion to Compel Arbitration and Nexa's request to dismiss the PAGA representative claims.

## II.

## <u>STATEMENT OF FACTS</u>

Diaz worked at Nexa as a mortgage loan officer from about July 13, 2020 to February 9, 2022. (*Declaration of Damian Diaz* filed herewith ["*Diaz Decl.*"] ¶ 2.) He worked out of his house in San Diego County, California. Contrary to Nexa's assertion in the Employment Agreement, Diaz was never offered or given a position as an "inside loan officer." (*Diaz Decl.* ¶ 3.) This was intentionally placed in the Employment Agreement to avoid wage and hour protections.

Prior to commencing employment with Nexa, Diaz was contacted by a Nexa loan officer who suggested that he would benefit from also becoming a Nexa loan

officer.  Diaz then attended a "Zoom" meeting with several other potential "recruits" where the benefits of becoming a Nexa loan officer were promoted the attendees. (*Diaz Decl.* ¶ 4.)

After that, Nexa sent an email to Diaz that offered him what was essentially a "welcome package" with instructions of what Diaz would need to provide or do as part of the onboarding process to become a Nexa employee. (*Diaz Decl.* ¶ 5.)

The email provided a link to electronically sign via "Docusign" the Nexa Mortgage LLC Outside Loan Officer Employment Agreement (the "Agreement") in which he was to adopt an electronic signature and initials for himself, and then clicked on the prompts made available by Nexa within the electronic document which automatically took the cursor to the places predetermined within the Agreement where Diaz would either "click" to enter initials automatically or click to enter a signature automatically into the pre-determined locations. (*Diaz Decl.* ¶ 6.)

Diaz understood that that he would need to complete the tasks listed in the instructions to ultimately become a Nexa employee.  He opened the Docusign Agreement link, but had no discussions with anyone at Nexa about its contents either before or during the signing process.  Diaz did not really review the Agreement in any sort of detail or discuss the Agreement or its contents with legal counsel before clicking to enter the signature. (*Diaz Decl.* ¶ 7.)

Section VIII of the Agreement contains the arbitration provision at issue.  The option to "opt out" of Section VIII of the Agreement was never discussed with anyone at Nexa before, during, or after the onboarding process. (*Diaz Decl.* ¶ 8.)  Although Diaz did not read or appreciate the significance of Section VIII of the Agreement, Diaz was never prompted to specifically initial any part of Section VIII of the Agreement, nor was there any way for him through the Docusign electronic format to "strike" or cross out portions of the Agreement, including portions of Section VIII while electronically signing via Docusign.  Diaz was also never prompted to choose to

either initial or not initial at the end of Section VIII, in the space following the last sentence. (*Diaz Decl.* ¶ 8.)

Despite the arbitration provision's requirement that Diaz create and notarize a personal opt out letter and mail via certified mail to both Nexa's Human Resources Department and to Diaz' immediate supervisor, Diaz was not provided the mailing address for either.  In fact, as far as Diaz understood, he never had an immediate supervisor during his entire tenure with Nexa. (*Diaz Decl.* ¶ 9.) Had Diaz read and understood the significance of the arbitration provision, he would have opted out of that section. (*Diaz Decl.* ¶ 10.)

While employed at Nexa, Diaz was responsible for selling mortgage loan products to customers which he did from his home "office", which was maintained by Diaz without reimbursement from Nexa. (*Diaz Decl.* ¶ 11.)  Diaz conducted sales from his home office more than half of his working time and only occasionally met with clients outside of his home office.  Diaz was paid according to a commission structure that he never really fully understood, nor was he given a breakdown of how his commissions were calculated on a per sale basis.  There were weeks throughout his employment in which he received no payments from Nexa. (*Diaz Decl.* ¶ 11.)

After Diaz left his employment with Nexa, Nexa filed a lawsuit against him for allegedly violating the non-solicitation clause in Section V of the Agreement.  At no time did Nexa present to the court an application that all other proceedings in the action be stayed pending the arbitration of any issue, question, or dispute which was arbitrable under Nexa's Agreement. (*Declaration of Brian C. Dawson* ["*Dawson Decl.*"], Exhibit "E".)  Diaz sought assistance from legal counsel in both California and Arizona to defend the allegations Nexa's complaint.  After communications between counsel for Nexa and Diaz' counsel, Nexa dismissed the action on or about March 17, 2022. (*Dawson Decl.* ¶ 2.)

///

## III.

## LEGAL STANDARD

It is disputed whether Diaz' work, which was solely performed within California, affected interstate commerce to the extent required to bring the arbitrability of the arbitration provision in the Agreement within the purview of Federal Arbitration Act (FAA).

Regardless, even if examined under the FAA, the defenses to the Agreement, such as fraud, duress, and unconscionability, are determined under applicable state law, which would apply to invalidate the arbitration provision at issue. 9 *U.S.C.* § 2 [written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, <u>save upon such grounds as exist in law or equity for the revocation of any contract</u>."]. The FAA does not authorize federal courts to invent special arbitration preferring procedural rules. *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1713 (2022).

A "written provision in a contract to submit to arbitration a dispute arising out of the contract is valid, irrevocable and enforceable except on 'such grounds as exist at law or in equity for the revocation of any contract.'" *Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App. 4th 1322, 1327 (1999) (quoting 9 *U.S.C.* § 2).

California law, rather than Arizona law as stated within section VI, VII and VIII of the Agreement, should be applied to determine the unconscionability of the Agreement.

Under California Labor Code section 925, choice of law and forum provisions designating a state other than California in employment agreements, as to employees working in California, are voidable at the request of the employee. Diaz' First Amended Complaint ("FAC") against Nexa, seeks a court order rendering the Arizona choice of law and forum provisions void. Thus, California law should be applied as to Nexa's Motion to Compel Arbitration. [See, Dkt. No. 1-2 Exhibit D, FAC, pg. 067, ¶¶ 86-88.]

California Labor Code § 925 states:

(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

      (1) Require the employee to adjudicate outside of California a claim arising in California.

      (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

(b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Satisfaction of § 925(b), requiring that the employee "request" that the provision be void can be met through the filing of a complaint in court seeking relief from the choice of law and forum provision. *LGCY Power LLC v. Superior Court,* 75 Cal.App.5th 844, 863-865 (2022).

Unconscionability under California law "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Foundation Health Psychcare Services Inc.,* 24 Cal.4th 83, 114 (2000) (internal quotation omitted).

To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability, but both "need not be present in the same degree." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017), (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). Instead, a sliding scale exists such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

## IV.

## LEGAL ARGUMENT

**A.** **Nexa Waived Its Right to Arbitration By Initiating A Case In Arizona Against Diaz.**

Nexa filed a lawsuit against Diaz in Arizona state court for an alleged breach of the non-solicitation clause located in section V of the Agreement.  Pursuant to the plain terms of the arbitration provision, Nexa's claim should have been arbitrated.  Ignoring its own carve-out provision, and ignoring the arbitration requirements, Nexa chose instead to initiate litigation in Arizona knowing full well the venue would be problematic for Diaz, a California resident.  Nexa's carve out provision only related to section IV of the Agreement, a fact well known to Nexa, the party who drafted the adhesive Agreement.

This Court has the authority and should deny Nexa's Motion for waiving its rights to arbitration by breaching its own arbitration provision.  A corporation should not be allowed to use an arbitration provision as a sword and shield whenever it sees fit.  The "right to arbitration, like any other contract right can be waived." *United States v. Park Place Associates Ltd.,* 563 F3d 907, 921 (9th Cir. 2009).  In *Park Place,* the court articulated the elements of a waiver of the right to arbitration as: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *Id.* at 921.

However, the U.S. Supreme Court recently held, in a unanimous decision, a showing of prejudice is not required to support a party's waiver of the right to arbitrate. *Morgan v. Sundance,* 142 S.Ct. 1708, 1710-1714 (2022).  In *Morgan*, the plaintiff brought a class action case against the defendant employer for wage and hour violations despite a written arbitration provision.  The employer defended the case in court for several months then brought a motion to compel arbitration.  The circuit court reversed the district's court ruling that the employer waived its right to arbitration by litigating the

case in court because plaintiff could not show any unfair prejudice to establish waiver. The Supreme Court granted cert on the limited issue of whether prejudice was required to establish waiver of a right to arbitrate. *Id.* at 1710-1713.

The U.S. Court held the elements required to establish waiver of arbitration rights are exactly the same as it would be in any other contractual context. *Id.* at 1713-1714. In its ruling, the court specifically rejected the idea that unfair prejudice is required to establish waiver - "outside the arbitration context, a federal court assessing waiver does not generally ask about prejudice. Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.'" (internal quotation marks omitted). *Id.* To decide whether a waiver has occurred, "the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Id.*

Thus, in order to find that Nexa waived its right to arbitration, this Court only needs to find: (1) knowledge of an existing right to compel arbitration; and (2) acts inconsistent with that existing right.

A "bedrock principle of California contract law is that 'he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" *Brown v. Dillard's*, 430 F.3d 1004, 1010, (9th Cir. 2005), quoting, *Pry Corp. of America v. Leach*, 177 Cal.App.2d 632, 639 (1960); see also *Loral Corp. v. Moyes*, 174 Cal.App.3d 268, 219 (1985) [the "requirement of performance may be excused by the other party's breach."). This is a contract rule of general application and is thus available as a defense to a motion to compel arbitration. *Brown v. Dillard's, Inc,*. 430 F.3d at 1010.

*Brown v Dillard's*, is illustrative of Nexa's waiver of its right to compel arbitration against Diaz. In *Brown,* the plaintiff employee filed a state court action after Dillard's refused to arbitrate her wrongful termination claim under its arbitration provision. In response to the lawsuit, Dillard's removed action to federal court and moved to compel arbitration. The district court denied the Motion. On appeal, the

Ninth Circuit affirmed and held that Dillard's could not compel the employee to honor arbitration agreement of which it was itself in material breach, and alternatively, Dillard's, waived its right to arbitrate subject claims. *Id.* at 1010-1011.

The court found "Dillard's breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings. Dillard's breach was tantamount to a repudiation of the arbitration agreement." *Id. at* 1011-1013.

Additionally, the court reasoned:

**If we took Dillard's view and allowed it to compel arbitration notwithstanding its breach of the arbitration agreement, we would set up a perverse incentive scheme. Employers like Dillard's would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings. To promote our national policy in favor of arbitration . . . we must decline to compel it in this case.**

Nexa's selective application of its own arbitration provision reeks of bad faith, which should not be rewarded by the court. When Nexa wants to ignore its arbitration requirements, it is apparently free to commence litigation in court for disputes that, by the definition written by Nexa, were required to be arbitrated. Now that Diaz has brought affirmative claims, Nexa is quick to ignore its previous litigation and instead demand Diaz' claims be arbitrated.

Unless Nexa's unilateral, pick-and-chose tactics are stopped, Diaz is likely to face additional unfair burdens. For example, section VII of the Agreement, permits Nexa the opportunity to pursue litigation in Arizona State or Federal court against Diaz "in the event that any litigation needs to be brought to…enforce or challenge the arbitration provisions herein…" Having sued in Arizona court once already for something that *required* arbitration, Nexa's adhesive Agreement affords Nexa the option to sue Diaz again in Arizona relating to the enforceability of the arbitration

provision it chose to ignore. Nexa's refusal to abide by its own arbitration provision when convenient for Nexa constituted an enforceable waiver.

**B.** **The Arbitration Provision Is Unconscionable and Should Not be Enforced.**

**1.** **The Arbitration Provision Is Procedurally Unconscionable.**

The "procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon, supra,* 846 F.3d. at 1259. The "oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347–48, *as modified on denial of reh'g* (Feb. 9, 2015.)). Oppression can be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive. *Id.* A contract of adhesion is one "imposed and drafted by the party of superior bargaining strength [ that] relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 1261.

The focus of this analysis is whether the contract was the result of oppression or surprise. The "oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *Kinney v. United HealthCare Servs., Inc.*, supra, 70 Cal. App. 4th at 1329. The element of surprise can be inferred when "the terms to which the party supposedly agreed [are] hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* An "arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (2004).

The fact that an individual could have refused employment and sought another job is of no consequence to the determination of whether an arbitration clause is unconscionable. *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 784 (9th

Cir. 2002) (holding that "whether the plaintiff had an opportunity to decline the defendant's contract and instead to enter into a contract with another party that does not include the offending terms is not the relevant test for procedural unconscionability.") Rather, the operative inquiry is simply whether a party in a position of unequal bargaining power is presented with an offending clause without the opportunity for meaningful negotiation ..." *Id.*

### (a) Nexa's arbitration rules, which were never provided to Diaz, are purposely ambiguous

California courts have held that the failure to provide incorporated rules governing the agreed upon arbitration may increase the likelihood of procedural unconscionability. See *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 485 (2011) (noting that the failure to provide the "arbitration rules adds a bit to the procedural unconscionability"); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010) (affirming superior court's finding that the agreement was procedurally unconscionable because "the agreement was prepared by [the employer], it was a mandatory part of the agreement and [the employee] was not given a copy of the AAA Rules"); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1572 (2009) (finding element of surprise bolstered by failure to include the governing JAMS rules). The rationale for this rule is that, by incorporating rules but not providing them to the "weaker" party, there is an element of surprise.

Similarly, when the incorporated rules include terms unfavorable to the weaker party, the failure to provide the governing rules results in procedurally unconscionable surprise. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003) (finding oppression and procedural unconscionability where the agreement merely referenced the Better Business Bureau arbitration rules without providing those rules to the customer or disclosing that they precluded the customer from obtaining damages); see also, *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004) (finding procedural unconscionability and surprise where the arbitration rules were not attached to the agreement because it

"fail[ed] to provide employees with adequate notice of the applicable rules of discovery"; and see *Baltazar v. Forever 21, Inc.*, 62 C4th 1237, 1246 (2016) ("[C]ourts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement.")

Although Nexa's arbitration provision states, ambiguously, that the arbitration will be "resolved through binding arbitration in accordance with the rules of JAMS Arbitration..." [Dkt. No. 4-2 pg. 008: Agreement at ¶ VIII], Nexa did not provide any the JAMS rules for arbitration at the time Diaz executed the Agreement or anytime thereafter. Several problems exist with Nexa's purposely vague and ambiguous reference to JAMS within the arbitration provision, all increasing the procedural unconscionability of that provision:

First, no one from Nexa pointed out, discussed, or even referenced the arbitration provision or "rules" with Diaz before, during, or after the "Docusign" process.

Second, Nexa never provided Diaz any actual JAMS rules before, during, or after the signing process.

Third, Nexa never provided Diaz any link or other method to locate whatever JAMS rules might apply before, during, or after the signing process.

Fourth, Nexa's drafting references "rules of JAMS Arbitration" but does not specify whether the rules are JAMS comprehensive arbitration rules or JAMS employment arbitration rules.

Fifth, the provision does not specify whether arbitration will be conducted pursuant to the JAMS rules in effect at the time of signing the Agreement or those that might be in effect at the time of a dispute. Adding to this uncertainty, is that both the JAMS employment arbitration rules and JAMS comprehensive arbitration rules were revised by JAMS several months into Diaz' employment with Nexa. (See Dawson Decl. Exhibits "B" and "D" JAMS 2021 revisions to both its comprehensive and

employment arbitration rules)  The result is that neither party could be sure of what

JAMS rules might be applicable to govern any dispute, setting up an almost certain

challenge in the event of a dispute as to what rules would be applicable to what type

of dispute between the parties.

For Diaz, Nexa's self-serving and ambiguous arbitration provision is

particularly burdensome in this regard.  The Agreement Section VII allows Nexa to

force Diaz (who purportedly consented to Arizona personal jurisdiction while

Docusigning the Agreement) to litigate in state or federal court in Arizona if either

Nexa or Diaz want to "challenge the arbitration provisions" in the Agreement.  By

failing to specify what rules even apply, Nexa ensured Diaz' confusion and frustration

would be exacerbated by being forced into out-of-state litigation just to determine the

playing field.

> **(b)** **Nexa's "opt out" provision was carefully hidden from Diaz and almost impossible to elect.**

Although Diaz did not read the arbitration provision or have any real

opportunity to discuss the arbitration provision with anyone from Nexa, the

requirement hidden at the bottom of the lengthy single paragraph arbitration provision

purports to give Diaz an option to opt out of the provision by either 1) "sending a

notarized letter to the attention of Employee's immediate supervisor copied to the

Company's Human Resources department, both sent via Certified Mail within 30 days

of the execution of this Agreement expressly opting out of this provision" or 2)

"striking the entirety of this paragraph and initialing here as follows:".

The problem with these two options is that the first option, as onerous as it may

be to draft an "express" opt out letter to the satisfaction of Nexa, have it notarized, and

then sent via certified mail to two separate parties within the 30 day time limit, did not

provide Diaz with the certified mailing addresses or contact information for either of

the two required parties.  In fact, Diaz did not know who his "immediate supervisor"

even was at the time, nor has he ever believed or been informed that he has ever had an immediate supervisor.

Second, the DocuSign agreement provided to Diaz in an electronic "click-to-sign" format did not provide an opportunity or manner in which Diaz could effectively strike provisions of the electronic Agreement, nor did Docusign alert Diaz to this hidden "opportunity" or provide any prompt to initial the electronic version where it specifically requires Diaz to "[initial] here as follows:" The result of hiding this "opt out" location within the document and purposely avoiding it by Nexa when establishing the pre-determined Docusign prompts for initials and signatures made it extremely difficult for Diaz, or frankly any other Nexa employee, to locate and effectively opt out of the arbitration provision.

The complexities purposely designed by Nexa are very similar to the complexities created by the employer in *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021). In *Lim*, the employee plaintiff was also presented with "a contract of adhesion i.e., a take-it-or-leave-it offer" from its employer, TForce. *Lim*, at 1001. With "respect to unfair surprise, TForce presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font. Nothing in the text of the agreement called Lim's attention to the delegation clause, and Lim was not required to sign or initial that specific provision. This further supports some degree of procedural unconscionability." *Lim*, at 1001.

Here, Diaz was similarly not given "meaningful opportunity" to negotiate or reject the terms of the arbitration provision, nor was he given "reasonable notice of [the] opportunity to negotiate or reject.., and … an actual, meaningful, and reasonable choice to exercise that discretion." *Circuit City Stores, Inc. v. Mantor*, 335 F3d 1101, 1106 (9th Cir. 2003).

Due to the high level of procedural unconscionability present in the arbitration provision and within the sections of the Agreement to which the arbitration provision

relates to and relies upon for its construction, under *Armendariz*, even a minimal level of substantive unconscionability renders the arbitration provision void.

### 2. The Arbitration Provision is Substantively Unconscionable.

"Substantive unconscionability examines the fairness of a contract's terms." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129 (2019). The substantive unconscionability doctrine is concerned with terms that are "unreasonably favorable to the more powerful party," not just " a simple old-fashioned bad bargain." *Id.* at 130. California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided. *Id.* at 129–30 (citations omitted).

Substantive unconscionability focuses on the one-sidedness of the contract terms. *Armendariz*, 24 Cal. 4th at 115. Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself. *Id.* at 116. In determining whether a clause is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provisions. *Acorn v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1172 (N.D. Cal. 2002).

The test is whether the terms impair the integrity of the bargaining process or otherwise contravene public policy, or the terms "attempt to alter in an impermissible manner fundamental duty otherwise imposed by the law" or "negate the reasonable expectations of the non-drafting party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013); see also *Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227, 247 (2016), - term "outside the reasonable expectation of the non-drafting party or is unduly oppressive" (internal quotes omitted).

Here, there are several aspects of Nexa's arbitration provision that render it substantively unconscionable.

(a) **The arbitration provision requires Diaz to split arbitration fees and costs with Nexa.**

When an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement cannot require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. *Armendariz*, 24 Cal. 4th at 110-11; and see *Porkorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) [substantive unconscionability exists when a fee-shifting clause creates for employees a "greater financial risk than they would face if they were to litigate those claims in federal court."]. There is no presumption that a fee-splitting requirement enhances neutrality; any benefit of such a provision is outweighed by the adverse effect on the employee. *Circuit City Stores, Inc. v. Adams*, 279 F3d 889, 894 (9th Cir. 2002) (applying Calif. law) - requiring employee to split arbitrator's fee would itself render agreement *substantively unconscionable*; *Shankle v. B-G Maintenance Mgmt. of Colorado, Inc.* 163 F.3d 1230, 1234-1235 (10th Cir. 1999); see *Cole v. Burns Int'l Security Services*, 105 F.3d at 1468 and see, *Little v. Auto Stiegler, Inc.*, 29 C4th 1064, 1085 (2003): the employer must pay "all types of costs that are unique to arbitration."

Here, the arbitration provision requires any dispute between the parties concerning or arising out of their employment relationship (except enforcement or challenges to the arbitration provisions, alleged violations of section IV of the Agreement) be resolved through binding arbitration in accordance with the rules of JAMS Arbitration. The arbitration provision further mandates that "notwithstanding any JAMS rules to the contrary, the parties will share equally in the costs of such arbitration, and shall be responsible their own attorneys' fees…" Per the plain language of the arbitration provision, Diaz is required to pay half of the JAMS' fees and expenses.

Although no one knows whether JAMS employment rules or comprehensive rules apply (or what version of either set of rules apply), Diaz would be responsible

for half the fees and costs *regardless* of which set of JAMS rules apply. If Diaz wants to challenge this outcome, per the terms of the Agreement, Diaz would need to seek redress in an Arizona court.

If the JAMS comprehensive rules apply (either those in force when he Docusigned the Agreement or those as revised during his employment), Diaz would be responsible for his pro-rata share of the costs. (See *Dawson Decl.* Exhibit "C" JAMS Comprehensive Arbitration Rules & Procedures Effective June 1, 2021).

JAMS comprehensive arbitration Rule 31(a) mandates: "Each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses". (*Dawson Decl.* Exhibit "C" at pg. 35). Rule 31(c) also mandates: "The Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration. *Id.*

Even if one takes a contrary interpretation of the plain language of Nexa's arbitration provision and concludes that the absence of the term "employment rules" instead means that "employment rules" apply, this re-drafting still does not necessarily alleviate the unconscionable cost burden on Diaz due to Nexa's drafting trick. On their face, JAMS employment rules arguably might limit Diaz' arbitration cost outlay to his "initial JAMS case management fee". (See *Dawson Decl.* Exhibit "A" JAMS Employment Arbitration Rules & Procedures Effective June 1, 2021, at Rule 31(c)).

However, a further reading of Rule 31(c) shows this cost saving feature does not apply to Diaz, nor any other Nexa employee who failed to locate and execute the hidden opt out language within the arbitration provision. Rule 31(c) mandates "[i]f an arbitration is based on a clause or agreement that is required as a condition of

employment, the only fee employee may be required to pay is the initial JAMS case management fee."

Here, the problem for Diaz is that Nexa's arbitration provision technically provided Diaz an option to opt out of the arbitration clause, making that clause not a "required condition of employment" and this portion of Rule 31(c) minimizing Diaz' expenses arguably does not apply. Instead, Rule 31(c) goes on to state that "[i]f an Arbitration is **not** based on a clause or agreement that is required as a condition of employment, the parties are jointly and severally liable for the payment of JAMS arbitration fees and arbitrator compensation and expenses." (emphasis added.)

Moreover, if Diaz or Nexa wanted to challenge the applicability of Employment Rule 31(c), the Agreement's "Forum Selection/Jurisdiction" clause forces that dispute to be litigated in Arizona court, a forum to which Diaz purportedly consented as part of the Agreement. As a result, the provision is unconscionable. *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (finding requirement that customers "split the arbitrator's fees with AT&T" to be unconscionable under California law); and see *Armendariz* at 110-111.

### (b) The Agreement contains an improper choice of law clause.

The arbitration provision claims that "the Agreement is made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona." As discussed above, out-of-state employers may contract into their employment agreements choice of law and forum selection provisions as long as the forum selected provides adequate remedies otherwise provided to the employee under California law. *Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1294 (2006).

Here, California law provides far greater protections for employees than Arizona. For example, California Labor Code § 925 specifically prohibits employers from adjudicating claims outside of California that arose in California. Furthermore, Nexa has already sued Diaz once in Arizona state court, seeking damages and attorneys' fees from Diaz for an alleged breach of a non-solicitation provision that

1 would be invalid under California law, as would the Agreement's non-reciprocal
2 attorneys' fees provision contained in section V(h) of the Agreement that gives Nexa
3 the right to collect attorneys' fees but not Diaz in the event of a dispute. (See CA B&P
4 Code § 16600; CA Civil Code § 1717; and see *AMN Healthcare, Inc. v. Aya*
5 *Healthcare* Services, 28 Cal.App.5[th] 923, (2018) and *Barker v. Insight Global, LLC*,
6 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) both invalidating post-employment non-
7 solicitation agreements.)

8 **(c)    The Agreement contains an improper choice of forum clause.**

9 Paragraph VII of the Agreement provides that the employee consents "to
10 personal jurisdiction in Arizona" in the event that any litigation needs to be brought to
11 "enforce or challenge the arbitration provisions herein".  This provision is
12 unconscionable because it is designed to discourage employees like Diaz from
13 enforcing their rights against Nexa in light of the increased cost and inconvenience of
14 traveling to Arizona and retaining counsel there. See *Lucas v. Gund, Inc.*, 450 F.
15 Supp. 2d 1125, 1134 (C.D. Cal. 2006) (declining to enforce a New Jersey choice of
16 venue provision because the plaintiff resided in California such that the "provision
17 would impose too great a burden").

18 Thus, to the extent that it applies to the arbitration clause, the choice of venue
19 provision is unduly burdensome and substantively unconscionable.  The clause is
20 designed merely to discourage employees like Plaintiff Diaz from enforcing their
21 rights against Nexa. The clause is substantively unconscionable and cannot be
22 enforced.

23 **(d)    The Agreement contains an improper clause exempting Nexa**
24 **from arbitrating claims it is likely to bring.**

25 The Employment Agreement contains Nexa designed carve outs from the
26 mandatory arbitration provisions for certain claims.  Not surprisingly, these exceptions
27 apply to only claims that Nexa is likely to bring.

28

An "arbitration agreement is substantively unconscionable if it requires the employee but not the employer to arbitrate claims." *Martinez*, supra, 118 Cal. App. 4th at 114 (internal quotation omitted). In *Martinez*, the court held that an arbitration agreement that required both parties to arbitrate state and federal statutory claims, contract and tort claims, and claims of discrimination, but specifically exempted the employer from an obligation to arbitrate any claims "for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information," was substantively unconscionable. *Id.* at 115. The court reasoned that the provision required "employees to arbitrate the claims they are most likely to assert against [the employer], while simultaneously permitting [the employer] to litigate in court the claims it is most likely to assert against its employees." *Id.* The court determined that the provision was not bilateral and accordingly, was substantively unconscionable.

Although bilateral arbitration is generally required, California law allows an employer to preserve a judicial remedy for itself if justified based on a legitimate commercial need or business reality. *Armendariz*, 24 Cal. 4th at 117. For example, in *Laughlin v. VMware, Inc.*, the court found an employer's reservation of the right to obtain an injunction from a court for certain breaches related to the employer's intellectual property to be justified by a legitimate business purpose and not unconscionable. *Laughlin v. VMware, Inc.*, 2012 U.S. Dist. LEXIS 12262, at *17. However, in that case, the provision reserved only the right to seek an injunction.

Here, Nexa's two carve out provisions are much broader. First, Section VII of the Agreement provides "in the event that any litigation needs to be brought to obtain temporary injunctive relief and or enforce or challenge the arbitration provisions herein the parties agree that any litigation between the parties may only be brought in federal District Court in Arizona, or in the event subject matter jurisdiction is lacking, in an Arizona court of competent jurisdiction."

Second, Section VIII provides an additional carve out from arbitration that allows either party to seek "relief in a state or federal court located in Arizona, arising from any action that violates section IV of this Agreement". The Agreement Section IV "Employee Referral Program" relates to the complicated structure of commissions, fees, and "overrides" that justify Nexa withholding portions of Diaz income as a result of Nexa's pyramid recruiting structure.

Thus, the exception here is broader, and is **not** limited to seeking injunctive relief to protect Nexa's intellectual property or justified by a legitimate business purpose. Accordingly, this provision is substantively unconscionable.

**3. Nexa's Employment Agreement Cannot Be Saved By Severing The Numerous Deficiencies.**

An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision. *Armendariz*, supra, 24 Cal.4th at p. 124. Such "multiple defects indicate a systematic effort to impose arbitration on [the non-drafting party] not simply as an alternative to litigation, but as an inferior forum that works to the [drafting party's] advantage." *Id.* An arbitration agreement is also deemed "permeated" by unconscionability if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* at 124–125. If "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," the court must void the entire agreement. *Id.* at 125.

Courts will not rewrite a party's arbitration agreement to save it from its own unconscionable terms. *Bridge Fund v. Fastbucks Franchise,* 622 F.3d 996, 1006 (2010)(refusing to rewrite an Arizona choice of forum clause) and see *Subcontracting Concepts (CT), LLC v. De Melo*, 34 CA5th 201, 216 (2019) - systematic unconscionability shows "there is no single provision that can be stricken" to remove unconscionable taint from agreement and so severance not required; *Baxter v. Genworth North America Corp.,*16 CA5th 713, 738 (2017).

An unconscionable arbitration term should also not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach. *Parada*, supra, 176 Cal. App. 4th at 1586, (citing *Armendariz*, 24 Cal.4th at 124–25.

*Armendariz* explained that employer would not be deterred from routinely inserting a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. *Id.* at 124 n.13; and see *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (severing the unenforceable provisions of an arbitration clause would allow an employer to draft one-sided agreements and "then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first instance.")

Here, there are several unconscionable clauses in Nexa's arbitration provision that cannot, and should not, be severed:

- **The improper cost sharing provision.** Fixing this provision would require the rewriting of the agreement or insertion of additional terms. Striking the provision would not change Diaz' obligations as JAMS rules require the litigants to share the costs.

- **The ambiguous rules of arbitration** Nothing in section VIII indicates whether JAMS comprehensive rules or employment rules apply, nor does it specify whether the rules in effect at time of signing or at time of a dispute would apply. None of these problems can be corrected with a severance.

- **Nexa's exempted claims clause, and the improper choice of law and forum clauses.** These provisions cannot simply be severed as this Court would need to rewrite the agreement to clarify what disputes would be settled in what forums and what states, and what portions of which disputes would be arbitrable.

Taken together, the issues raised by these contractual provisions create an agreement permeated with unconscionability. The court cannot just sever these provisions, but would instead have to rewrite portions of the Agreement.

**C.    The Court Should Stay Diaz' Representative PAGA Claims If Arbitration is Ordered.**

If the Court grant's Nexa's Motion to Compel Arbitration, Plaintiff's representative PAGA claims should be stayed. In *Viking River Cruises*, the U.S. Supreme Court held that PAGA was pre-empted only "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Viking River Cruises v. Moriana,* 142 S.Ct. 1906, 1924 –1925 (2022). In other words, the U.S. Supreme Court found that the Federal Arbitration Act required that "individual" PAGA claims be compelled to arbitration.

However, the court went on:

> the remaining question is what the lower courts should have done with [the Plaintiff's] non-individual claims. Under our holding in this case, those claims may not be dismissed simply because they are 'representative.' … But as we see it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action.

*Id.* at 1925.

On that basis, the U.S. Supreme Court found that a plaintiff whose individual claims had been "pared" away lacked standing to bring a PAGA claim. Ibid. But - the California Supreme Court has explicitly held that individual claims are not necessary to maintain a PAGA action. *Kim v. Reins Int'l California, Inc.*, 9 Cal.5th 73, 86 (2020) ("a PAGA claim is not 'derivative of, or dependent on' an individual claim for relief")

Rather, PAGA broadly confers standing on anyone "'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.'" Id. at 83-84. It does not matter whether a person's individual claims have settled, are time-barred, or that the statutory violations the person experienced lack a private right of action whatsoever. *Id.* at 84, 89; see also, e.g., *Johnson v. Maxim Healthcare Servs., Inc.*, 66 Cal.App.5th 924, 930 (2021) (PAGA standing does not depend on maintaining an individual Labor Code claim.)

Until the California Supreme Court, appellate courts, and/or the state legislature have ruled or decided otherwise, and they may soon have the opportunity to clarify the matter, this Court should stay Diaz' representative PAGA claims.

## VII.

## CONCLUSION

Nexa's arbitration provision contained within its take-it-or-leave-it Agreement is unenforceable because it is both procedurally and substantively unconscionable. In light of the multiple unconscionable provisions and resulting pervasive unconscionability, the court should not attempt to sever unconscionable provisions from the Agreement. In fact, even attempting to sever these provisions would instead require a re-drafting, which is not permitted. Diaz respectfully asks the Court to deny Nexa's Motion to Compel Arbitration.

Dated:    February 7, 2023          DAWSON & OZANNE


By:    s/ *Brian C. Dawson*
       BRIAN C. DAWSON, Attorneys for
       Plaintiff Damian Diaz
       Email: brian@dawson-ozanne.com